IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,

v.                                                       Civil No. 01-0732 WJ/RLP **ACE**

STERLING BROTHERS
CONSTRUCTION, INC.,

       Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed March 19, 2002 (**Doc. 60**). The complaint, filed by Plaintiff EEOC, alleges that Deena Kleinegger was sexually harassed by Sterling's owner and president, Bruce Sterling, and was constructively discharged as a result.[1] Having considered the parties' briefs and the

---

[1] It is not clear whether Plaintiff is alleging harassment as a *quid pro quo* or *hostile environment* claim. Under the *Ellerth/Faragher* analysis setting out the standard for employer liability in Title VII actions, an affirmative defense is not available to employers in cases where a tangible employment action occurred, i.e., a *quid pro quo* claim. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). However, courts have disagreed on whether constructive discharge can be considered a tangible employment action for purposes of alleging a *quid pro quo* case. *See, e.g., Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 294 (2d Cir.1999) (concluding that constructive discharge does not constitute a "tangible employment action," as that term is used in *Ellerth*); *Morton v. Steven-Ford Mercury of Augusta, Inc.*, 162 F.Supp. 2d 1228, 1244 (D. Kan. 2001) (reasoning that "tangible employment actions" under *Ellerth* and *Faragher* are limited to those situations in which the alleged harasser directly fired, demoted or reassigned the victim of harassment); *see also Rogers v. City County Health Department of Okla. County*, 2002 WL 241296 n.2 (10th Cir. 2002 (Okla.)) (plaintiff unable to survive summary judgment on *quid pro quo* claim based on a constructive discharge theory); *but see Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 n.6 (6th Cir. 2000) (assuming without discussion that constructive discharge was a tangible employment action); *Cardenas v. Massey*, 269 F.3d 251, 266 (3rd Cir. 2001)

applicable law, I find that Defendant's motion will be granted in part and denied in part.

Ms. Kleinegger started working as a secretary at Sterling Brothers Construction, Inc. ("Sterling Brothers"), a small general contracting business located in Aztec, New Mexico, in July 1999. Plaintiff EEOC alleges that the harassing conduct started three months after Ms. Kleinegger started the job and continued up until a week prior to her leaving in May of 2000. Ms. Kleinegger allegedly was afraid to complain. The only other company officer or manager other than Bruce Sterling was his wife Cathy. According to Ms. Kleinegger, she had both witnessed and been on the receiving end of Cathy Sterling's "violent outbursts," and felt she was physically at risk reporting the harassing incidents to Ms. Sterling.

Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores*, Inc., 144 F.3d 664, 671 (10th Cir.1998). To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir.1994).

*Analysis*

Plaintiff contends that Mr. Sterling "poked" and "pinched" Ms. Kleinegger in the rib cage

---

(same); *Stricker et al. v. Cessford Construction Co. et al.*, 179 F.Supp. 2d 987, 1002 (N.D.Iowa 2001) (noting that the Eighth Circuit has *intimated* that constructive discharge may constitute a "tangible employment action" depriving a defendant of the *Ellerth/Faragher* defense) (emphasis added); *see also Montero v. AGCO Corp., et al.*, 192 F.3d 856, 891 (9th Cir. 1999) (finding a determination on issue unnecessary).

area, beneath the line of her bra. This conduct started after she had worked at Sterling Brothers for three months, became more frequent in November 1999, and continued in January 1999. Plaintiff estimates that this conduct occurred twenty to thirty times. During the same period of time, Mr. Sterling would go out to Ms. Kleinegger's work area, and if she was sitting, grab hold of her chair so that she could not get up, place his boot over the top of her boots and lean over her "with a sexual look," as though he were aroused. *Pltff's Ex. 2, Ms. Kleinegger's Aff, p. 2-3*. This type of behavior occurred about five or six times. Ms. Kleinegger also claims that Mr. Sterling "grabbed and squeezed" her buttocks while she was going past him through a doorway. *Deft's Ex. D at 109*. One week prior to her leaving the job, as she was straightening up papers on her desk, Ms. Kleinegger felt Mr. Sterling run his foot up the inside of her thigh to within two inches of her crotch. Mr. Sterling denies these incidents as having occurred.[2]

These incidents of harassment are set forth as "claims" in Defendant's statement of undisputed facts. Plaintiff disputes those facts on the basis that the use of the word "claims" challenges Ms. Kleinegger's credibility which is irrelevant at this stage in the litigation. At the same time, Plaintiff does not dispute that Ms. Kleinegger made such claims, which I find are sufficient to support an inference of sexual harassment. Defendant also peppers these statements of undisputed facts with statements that Ms. Kleinegger offers no witnesses or exact dates to the alleged incidents. However, Plaintiff's inability to dispute those statements have no bearing on the sufficiency of the evidence presented through Ms. Kleinegger's affidavit and deposition testimony as to the existence of a hostile working environment.

---

[2] Ms. Kleinegger states that the harassing conduct set out in the EEOC complaint does not include all the incidents because the interviewer "did not ask me to tell him everything." *Pltff's Ex. 2, ¶ 21*.

*Legal standard*

Title VII's prohibition against sex discrimination includes a ban on sexual harassment. *Harris v. Forklift Systems, Inc*, 510 U.S. 17 (1993) 114 S.Ct. 367, 370; *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986). For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1264 (10th Cir.1998) (quotations omitted). In order to determine whether conduct was sufficiently severe or pervasive enough to be actionable sexual harassment, a court must consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Cadena v. The Pacesetter Corp.*, 18 F.Supp.2d 1220, 1226 (D.Kan.1998) (citing Faragher, 524 U.S. 775 (1998) (internal quotes omitted). In considering these factors, a court also must consider the context in which the conduct occurred. *Id*. (citing *Smith v. Norwest Financial Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cir.1997)).

The harassing conduct must be "both objectively and subjectively abusive." *Turnbull v. Topeka State Hospital et al*, 255 F.3d 1238, 1243 (10th Cir. 2001) (citation omitted). Thus, I must consider not only effect the discriminatory conduct actually had on Ms. Kleinegger, but also the impact it likely would have had on a reasonable employee in her position. *See Saxton v. Amer. Telephone & Telegraph Co.*, 10 F.3d 526, 534 (7th Cir. 1993). Ms. Kleinegger states that she told Mr. Sterling that she didn't want him touching her and that she knew his wife would be

very jealous if she caught him doing those things, and that she felt angry, powerless and humiliated. Ms. Kleinegger found it difficult to concentrate on her job duties while Mr. Sterling was at the shop. She states that she asked Sue Beck, co-worker, to keep an eye out and never leave her alone with Mr. Sterling because she felt uncomfortable being alone with him and was afraid he would make advances.

Ms. Kleinegger stated in her deposition that when Mr Sterling poked her under her breast she told him to stop because she was ticklish and that she shook her finger at him when he ran his foot up her leg. Defendant seems to take issue with the seriousness of these last responses in terms of Ms. Kleinegger making her discomfort clear to Mr. Sterling. However, in the context of all the circumstances, a reasonable juror could find that the alleged conduct had a sufficiently adverse effect on Ms. Kleinegger in that she found this physical contact to be humiliating and that the conduct interfered with her work environment. *See Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (rejecting a mechanical approach to analyzing hostile work environment claims in favor of making the determination "in light of the record as a whole," including "the context in which the alleged incidents occurred").

The evidence suggests that a reasonable person could have found the environment to be hostile in its pervasiveness, if not its severity.[3] The harassment was physical in nature, and the alleged harasser is the owner of the company. *See, e.g., Davis v. UPS et al.*, 142 F.3d 1334 (10th Cir. 1998) (holding that incidents of unwelcome hugging and kissing and other physical contact

---

[3] The harassing conduct must be sufficiently pervasive or sufficiently severe to alter the terms, conditions, or privileges of Plaintiff's employment. See *Smith v. Norwest Financial Acceptance, Inc.*, 129 F.3d 1408, 1412 (10th Cir. 1997) (noting the disjunctive nature of the inquiry).

5

by plaintiff's co-worker, one of which could be described as a physical assault, were sufficient to support a jury finding of a hostile work environment); *Rogers v. City County Health Department of Okla. County*, 2002 WL 241296 n.2, *3 (10th Cir.2002 Okla) ("troubling" scenario because alleged harasser was not "simply a co-worker . . . but instead the highest ranking official in the Health Department"). Given the period of time Ms. Kleinegger was employed at Sterling Construction, the incidents occurred frequently enough to support a finding that the conduct was pervasive and objectively unwelcome. *See Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1006 (8th Cir. 2000) (evidence supported jury's conclusion that collection of physical advances, propositions, and mistreatment plaintiff endured for more than a year was both unwelcome and offensive, and sufficiently severe or pervasive to alter the conditions of employment).

On the other hand, instances of yelling and vulgarity by Bruce and Cathy Sterling do not figure into the creation of a hostile work environment. Ms. Kleinegger claims that both individuals were prone to outbursts around the office, and remembers one time Cathy Sterling threatened to break her "goddam fingers" when she placed the mail on Ms. Sterling's calculator. She also claims that after she had worked at Sterling Construction a few months, Mr. Sterling came by her work area and screamed at her for "about an hour" using the word "goddam." *Deft's Ex. D at 85*. In the context of Plaintiff's work environment and the relatively innocuous nature of the profanity, neither these example nor others presented by Plaintiff meet the standard for a hostile work environment, *see Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1546 (10th Cir. 1996), nor can they be considered sexually explicit or offensive. *See Winsor v.*

6

*Hinckley Dodge, Inc.*, 79 F.3d 996, 1001 (10th Cir. 1996).[4]

Defendant challenges the testimony of certain witnesses on the basis that this testimony contradicts Plaintiff's allegations. My review of the presented testimony indicates that these inconsistencies do not erode the basic factual issues underlying the alleged incidents of harassment. For example, whether or not Plaintiff discussed Mr. Sterling's behavior with co-worker Sue Beck while they were both working together and whether Ms. Beck actually witnessed any of the incidents bears on Plaintiff's credibility and is a matter more appropriately addressed and resolved by a fact finder, and not by the Court on a summary judgment motion. *See Bisbee v. Bey*, 39 F.3d 1096, 1101 (10th Cir. 1994) (questions of credibility should be decided by the jury).[5] I also do not find Ron Darnell's testimony to be inadmissible hearsay, as it would be admissible as a prior consistent statement of Ms. Kleinegger.[6] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (content or the substance of the evidence, if not the form, must

---

[4] In her affidavit, Ms. Kleinegger stated that she believed that Mr. Sterling would yell and scream at her because he was angry that she was not receptive to his advances. Even so, Mr. Sterling's actions could not be construed as a tangible employment action for purposes of characterizing the claim as *quid pro quo* because yelling and screaming at an employee does not result in economic injury. *See Mallinson-Montague et al. v. Pocrnick et al*, 224 F.3d 1224 (10th Cir. 2000) (tangible action is material, significant, or causes economic injury); *see also Ellerth*, 524 U.S. at 751-54 (distinction between *hostile environment* and *quid pro quo* cases remain relevant only to the extent they illustrate the evidentiary distinction between cases involving threats which are carried out and those featuring offensive conduct in general).

[5] For example, Sue Beck stated that she saw Mr. Sterling push Ms. Kleinegger's pant leg "up just a little ways. . . just a couple of inches. . . up her boot." *Deft's Ex. G at 77*. She also stated that Ms. Kleinegger told her that Mr. Sterling would grab at the area underneath her ribs. *Ex. G at 68*. However, Ms. Kleinegger does not remember talking with Ms. Beck at all before she quit her job. *Deft's Ex. D at 143*. Also, in her EEOC statement, she stated that there were no witnesses to any of the incidents. *Ex. D, attachment 13*.

[6] Mr. Darnell is an employee whom Ms. Kleinegger dated while she worked at Sterling Construction.

be admissible at trial). Further, because Mr. Darnell is listed as a witness, his testimony will be available and subject to cross-examination at trial. *Id*. (Fed.R.Civ.P.56(e) supporting materials need not themselves be admissible in evidence so long as they demonstrate availability of admissible evidence at trial).

*Constructive Discharge*

The existence of a viable hostile environment claim alone does not support Plaintiff's constructive discharge claim. *See Spulak v. KMart Corp.*, 894 F.2d 1150, 1153 (10th Cir. 1990) (finding of constructive discharge based not only on discriminatory act but on aggravating factors that make staying on the job intolerable); *accord, James v Sears, Roebuck and Co., Inc.*, 21 F.3d 989, 992 (10th Cir. 1994). Constructive discharge occurs when the employer by its illegal discriminatory acts has "made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sanchez v. Denver Publ. Schools*, 164 F.3d 527, 531, 534 (10th Cir. 1998). However, a plaintiff's subjective views of the working conditions are irrelevant. *Id*. Rather, in determining whether a plaintiff voluntarily resigned or was constructively discharged, the Court must consider the totality of the circumstances under an objective standard. *See Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997).

Ms. Kleinegger was not forced to leave Sterling Construction; she resigned. *See Parker v. Bd. of Regents of Tulsa Junior College*, 981 F.2d 1159 (10th Cir. 1992) ("If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged"). Looking at the circumstances in this case through the lens of an objective standard, even when considering the evidence in Plaintiff's favor, I find that the

8

evidence does not support an inference that Ms. Kleinegger was constructively discharged. Notwithstanding Ms. Kleinegger's contentions that she had no other choice but to quit, Plaintiff presents no facts which would persuade a reasonable juror to find the same. *See Derr v. Gulf Oil Corporation*, 796 F.2d 340, 343 (10th Cir. 1986) (issue is whether a reasonable person in plaintiff's position would have viewed the working conditions as intolerable).

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 60**) is hereby DENIED IN PART and GRANTED IN PART as follows: the motion is DENIED on Plaintiff's claim of hostile environment based on sexual harassment, and GRANTED on Plaintiff's claim of constructive discharge, which claim is hereby DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE